UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCR 25-0044-JGB** | Date | August 12, 2025 |
| Title | ***United States of America v. Tevin Darnell Skinner*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Government: | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:** **Order GRANTING-IN-PART Defendant's Motion to Suppress Evidence (Dkt. No. 16).**

Before the Court is Defendant Tevin Darnell Skinner's motion to suppress evidence. ("Motion," Dkt. No. 16.) The Court held a hearing on the Motion on July 14, 2025. After considering oral argument and the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** Defendant's Motion.

## I. BACKGROUND

Defendant Tevin Darnell Skinner ("Defendant" or "Skinner") is charged with one count of knowingly possessing firearms and ammunition after having been convicted of offenses punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1) ("Count One"). ("Indictment," Dkt. No. 1.)

On June 6, 2025, Defendant moved to suppress all evidence derived from a warrantless search of Defendant's vehicle following a stop for an alleged traffic violation. (Motion.) In support of the Motion, Defendant filed:

- Officer Jacob Valdivia's ("Valdivia") in-car camera system footage ("ICC," Dkt. No. 16-1);
- the January 25, 2025 police report ("Police Report," Dkt. No. 16-2);
- a map of the route Defendant drove prior to arrest ("Map," Dkt. No 16-3); and

- Officer Valdivia's body worn camera footage during the stop, search, and arrest ("BWC," Dkt. No. 16-4).

On June 23, 2025, the Government opposed the Motion. ("Opposition," Dkt. No. 20.) In support of the Opposition, the Government filed:

- the declaration of Officer Valdivia ("Valdivia Decl.," Dkt. No. 20-1);
- the Police Report;
- the ICC;
- the BWC;
- the January 25, 2025 dispatch log ("Dispatch Log," Dkt. No. 20-5);
- five photographs ("Photos," Dkt. No. 20-6); and
- a screenshot from the BWC ("Screenshot," Dkt. No. 20-6).

On July 8, 2025, Defendant replied. ("Reply," Dkt. No. 21.)

## II. FACTS

### A. Traffic Stop

On January 25, 2025, at approximately 11:43 p.m., Officer Valdivia of the Palm Springs Police Department ("PSPD") was parked near an intersection when he observed a black Chevrolet Impala (the "Impala" or the "Vehicle") turn left from W Sunview Ave onto Corozon Ave. (ICC at 00:40-1:24.) Officer Valdivia followed the Impala. (Id.; Opposition at 2.) After a few blocks, the Impala approached the intersection at Rosa Parks Road and Frontage Road, with a posted stop sign. (ICC at 1:21-1:38; Map.)

Valdivia observed the Impala fail to stop behind the limit line, in violation of California Vehicle Code § 22450. (ICC at 1:32-38.) The white paint of the limit line and the word "STOP," were partially faded. (Id.) Valdivia initiated a traffic stop by activating his emergency lighting. (Police Report at 1.) The Impala complied with the stop and pulled over in the gas station parking lot across the street from the stop sign. (Id.)

At approximately 11:45 p.m., Valdivia approached the driver, Defendant Skinner, the Impala's only occupant. (BWC at 00:13-00:20.) As Valdivia approached the car, Skinner opened the driver's door and started to get out, but then complied with Valdivia's orders to stay inside the Vehicle. (Id. at 00:13-00:22.) Officer Valdivia recognized Skinner from previous law enforcement encounters. (Police Report at 1.) Valdivia asked Skinner, "you still on probation?" (BWC at 00:25-00:29.) Skinner responded, "federal probation sir." (Id.) Valdivia then asked Skinner to roll down the windows, and Skinner complied. (Id. at 00:29-00:39.) When Skinner asked if he had broken any rules, Valdivia answered that he had failed to stop at the limit line and stated "you're on probation too, so." (Id. 00:29-00:45.) Valdivia shined his flashlight in the Impala's backseat and observed an open Carlo Rossi grape wine jug that was approximately one quarter full. The wine jug is observable in the BWC footage. (Id. 00:39-00:43.) Valdivia also

alleges that he observed a red solo cup containing a dark purple liquid in the front center console. (Police Report at 2.) The red solo cup is not visible in the BWC footage at this point in the encounter.

Valdivia asked Skinner if he had his ID with him and permitted Skinner to look for it in his jacket pockets for a short time. (BWC at 00:40-1:40.) When Skinner was unable to find his identification, he gave Officer Valdivia his date of birth. (Id.) Valdivia gave Skinner's name and date of birth to dispatch. (Id. at 1:40-1:54.) Valdivia asked Skinner what he was doing "up here." (Id. at 1:55-2:44.) Skinner responded that he had been at his significant other's home and was traveling downtown to see his mother because his grandmother had recently passed. (Id.)

**B. Search of Skinner**

Valdivia then asked Skinner if he had anything illegal in his car "besides the open bottle of wine." (Id. at 2:40-2:56.) Defendant responded that he had a "blade" in his pocket. (Id.) Officer Valdivia asked Skinner to step out of the Vehicle, and Skinner complied. Valdivia "did not detect any odor of an alcoholic beverage on Skinner once he exited the [V]ehicle." (Police Report at 3.) Valdivia proceeded to conduct a pat down search "because Skinner was wearing baggy clothing," because Valdivia believed that Skinner was associated with a gang, and because Valdivia purportedly knew of Skinner's past firearms arrests. (Id. at 2.) Valdivia did not find a blade or any other weapon on Skinner's person. (BWC at 3:10-3:44.)

**C. Vehicle Search**

Valdivia asked Skinner to lean against a trash can. (Id. at 3:36-3:44.) Valdivia stated he would "check your car, is that cool?" (Id.) Skinner did not respond to the question and instead asked if he could sit down. (Id.) Valdivia responded in the affirmative. (Id.) According to Valdivia, because Skinner did not specifically object to the Vehicle search, Valdivia interpreted that as consent. (Police Report at 2.) Valdivia further claims that because he observed the open container of alcohol in violation of California Vehicle Code § 23222(a), he "believed there could be additional containers of alcohol in the [V]ehicle." (Id.)

Valdivia proceeded to search the [V]ehicle. (BWC 4:00-5:17.) At this point in the encounter, the red solo cup in the center console is visible in the BWC footage. (Id. at 4:00-4:04.) Next to the cup was a closed container of cannabis. (Id.; Photos.)

At approximately 11:50 p.m., Valdivia observed a handgun underneath the driver's seat. (BWC at 5:14-5:17.) Valdivia placed handcuffs on Skinner and asked an accompanying officer to put Skinner in the back of the police vehicle. (BWC at 5:17-5:40.)

With gloved hands, Valdivia retrieved the handgun and observed that it was a semi-automatic Glock 22. (Police Report at 3.) Valdivia removed the magazine and observed unexpended cartridges within. (Id.) Valdivia provided the serial number to dispatch and it returned as not registered in the Automated Firearm System ("AFS"). (Id.) Valdivia confirmed

with dispatch that Skinner had previously been convicted of at least one felony. (Id.) Valdivia placed Skinner under arrest for being a felon in possession of a firearm and ammunition, and for possessing a concealed loaded firearm in a vehicle as a felon under California Penal Code §§ 29800(a), 25850(c)(6), and 30305(a). (Id.)

## III. LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." California v. Acevedo, 500 U.S. 565, 580 (1991) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)). The Government carries the burden of demonstrating the lawfulness of a warrantless detention, search, or seizure. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984); Mincey, 437 U.S. at 390-91.

### A. Traffic Stops

The Fourth Amendment's protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. Terry v. Ohio, 392 U.S. 1, 9 (1968). Routine traffic stops are "analogous to [] so-called Terry stop[s]." Rodriguez v. U.S., 575 U.S. 348, 354 (2015). The tolerable duration of police inquiries in traffic stops is determined by the stop's "mission—to address the traffic violation that warranted the stop" and to "attend to related safety concerns." Id.

During a lawful traffic stop, police officers "may order out of a vehicle both the driver . . . and any passengers" and "perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." Knowles v. Iowa, 525 U.S. 113, 117-18 (1998) (citations omitted). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that this safety or that of others was in danger." Terry, 392 U.S. at 27. Determining whether the officer acted reasonably in such circumstances requires considering "the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id.

### B. Automobile Exception

Vehicle occupants have standing to bring Fourth Amendment challenges because there is a reasonable expectation of privacy in a vehicle. United States v. Colin, 314 F.3d 439, 442-443 (9th Cir. 2002).

A warrantless search of a car requires either probable cause or consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Police officers may "conduct a warrantless search of a vehicle if they have probable cause to believe that it contains contraband." United States v. Pinela-Hernandez, 262 F.3d 974, 977-78 (9th Cir. 2001) ("This rule is known as the 'automobile

exception' to the general rule that the police must obtain a warrant before executing a search."). There is a "two-fold" rationale for this exception: "the expectation of privacy in one's vehicle is less than in one's home, and the mobility of vehicles necessitates faster action on the part of law enforcement officials." Pinela-Hernandez, 262 F.3d at 978. "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Davis, 530 F.3d 1069, 1084 (9th Cir. 2008) (internal citation and quotation marks omitted).

### C. The Exclusionary Rule

The exclusionary rule operates to exclude unlawfully seized evidence in a criminal trial. Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016). It encompasses both the "primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality." Id. (internal quotations omitted). The suppression of evidence retrieved from constitutional violations pursuant to the exclusionary rule functions to "deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, at 236-37 (2011).

## IV. DISCUSSION

The Government advances three arguments in support of its claim that the evidence recovered from Defendant's car on January 25, 2025 was lawfully obtained. First, it argues that Valdivia was justified in performing a traffic stop because Skinner committed a traffic violation. Second, it argues that Valdivia had reasonable suspicion to believe that Skinner was armed, justifying the pat-down search of his person. Finally, it argues that Valdivia had probable cause to search the car for evidence of violations of California Vehicle Code § 23222, possession of open or unsealed alcoholic beverage containers while driving. (Opposition.) The Court addresses these arguments in turn.

### A. Reasonable Suspicion to Conduct a Traffic Stop

Skinner first moves to suppress the entirety of the evidence obtained during the traffic stop on the basis that Valdivia did not have sufficient justification under the Fourth Amendment to effectuate a stop. (Motion at 3-4.)

In order to conduct "brief investigatory stops of persons or vehicles that fall short of traditional arrest," like the one here, the Fourth Amendment requires that a police officer have "reasonable suspicion to believe that criminal activity 'may be afoot.' " United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)); see also Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (holding that reasonable suspicion is necessary to justify a traffic stop). Reasonable suspicion requires that an officer have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cotterman, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (quoting

United States v. Cortez, 449 U.S. 411, 417–18 (1981)). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002) (internal citation and quotations omitted). Courts must assess "the totality of the circumstances," permitting officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (quoting Arvizu, 534 U.S. at 273).

In his Police Report, Valdivia articulated particularized facts for his belief that Skinner had committed a traffic infraction. Valdivia observed Skinner's Vehicle "slow[] down" but "fail[] to stop before the marked limit line at the posted stop sign." (Police Report at 1.) While the ICC footage is not taken from an ideal vantage point, it does appear that the Vehicle's front wheels were several feet past the limit line when Skinner briefly stopped before entering the intersection. (ICC at 1:32-38.) California Vehicle Code § 22450 provides: "The driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection." Cal. Veh. Code § 22450. "A traffic violation alone is sufficient to establish reasonable suspicion." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006).

Skinner's arguments to the contrary do not change the conclusion that reasonable suspicion supported the traffic stop. Skinner argues that the white paint of the limit line was "almost completely faded and not clearly marked" and that he "made a full stop before entering the intersection." (Motion at 3-4; see ICC at 1:32-38.) While the Court agrees that the white paint of the limit line and the word "STOP," were partially faded, both are visible in Valdivia's ICC video footage. (ICC at 1:32-38.) For a violation of § 22450, the limit line need only be "marked." Defendant provides no legal authority that a limit line must be "clearly marked." Based on the totality of the circumstances, the Court concludes that Valdivia had reasonable suspicion to believe that Skinner had violated § 22450. Because Valdivia had reasonable suspicion to justify a stop for a traffic law violation, it does not matter whether he used the stop as a pretext to uncover other criminal activity. See Whren v. United States, 517 U.S. 806, 812–13 (1996) (failing to signal justified a traffic stop, regardless of the officer's subjective motivations); United States v. King, 244 F.3d 736, 738 (9th Cir. 2001) ("Although Whren permits an officer to conduct a pretextual traffic stop as a means to uncover other criminal activity, the officer must reasonably suspect a traffic law violation.")

Thus, the vehicle stop was valid because Valdivia's Police Report, coupled with the ICC video footage corroborating his observations, are sufficient to establish reasonable suspicion to conduct the traffic stop.

//
//
//

### B. Reasonable Suspicion to Pat Down Skinner

#### 1. Prolonged Stop

Defendant next argues that Valdivia unlawfully prolonged the traffic stop beyond the time necessary to address the alleged traffic infraction, and that all evidence stemming from the prolonged stop must be suppressed. (Motion at 4-5.)

When investigating a traffic violation, an officer may "address the traffic violation that warranted the stop," make "ordinary inquiries incident to the traffic stop," and "attend to related safety concerns." United States v. Taylor, 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting Rodriguez v. United States, 575 U.S. 348, 354-55 (2015)). Ordinary inquiries incident to the traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." United States v. Evans, 786 F.3d 779, 786 (9th Cir. 2015) (citation modified). Attending to related safety concerns can include conducting a criminal history check, United States v. Hylton, 30 F.4th 842, 846 (9th Cir. 2022), shining a flashlight to illuminate the interior of the vehicle, Texas v. Brown, 460 U.S. 730, 739–40 (1983), asking whether the vehicle's occupants have any weapons, Taylor, 60 F.4th at 1239, and asking whether the driver is on parole, United States v. Ramirez, 98 F.4th 1141, 1145-46 (9th Cir. 2024). The traffic stop may last "no longer than is necessary to effectuate these purposes and complete the traffic mission safely." Taylor, 60 F.4th at 1239 (internal quotations omitted). A stop becomes unlawful only "if it is prolonged beyond the time reasonably required to complete that mission." Evans, 786 F.3d at 784 (citation omitted).

Here, the entire traffic stop, from the time that Valdivia approached the Vehicle to when Valdivia handcuffed Skinner, lasted just over five minutes. (BWC at 00:15-5:32.) The Court finds that Valdivia did not unlawfully prolong the stop by asking Skinner whether he was on probation and whether he possessed any weapons. See Taylor, 60 F.4th at 1239; Ramirez, 98 F.4th at 1145-46. Such inquiries are reasonably related to officer safety. The Court now turns to the question of whether Valdivia was justified in conducting the subsequent pat down search of Skinner's person.

#### 2. Pat Down

"[A]n officer effecting a lawful traffic stop may order the driver . . . out of a vehicle." United States v. Williams, 419 F.3d 1029, 1030 (9th Cir. 2005). "Once outside the stopped vehicle, the driver may also be patted down for weapons if the officer reasonably concludes that the driver might be armed and dangerous." Taylor, 60 F.4th at 1240 (internal quotations omitted) (quoting Arizona v. Johnson, 555 U.S. 323, 331 (2009)); United States v. Burkett, 612 F.3d 1103, 1107 (9th Cir. 2010) ("Law enforcement officers may lawfully conduct a 'frisk' or 'pat-down search' of a passenger during a lawful investigatory 'stop' if the officer reasonably suspects the passenger is armed and dangerous.").

When Valdivia asked Skinner if he had anything illegal in his car, Skinner responded that he had a blade in his pocket. (BWC at 2:40-56.) Skinner's statement that he had a blade provided Valdivia with reasonable suspicion that Valdivia was armed. See United States v. Dazen, 2023 WL 2354577, at *5 (D. Ariz. Mar. 3, 2023) (finding that a frisk was lawful where "[d]efendant responded by confirming that he was armed with knives, and [the officer] then conducted a frisk to retrieve the knives for officer-safety purposes.") Accordingly, Valdivia's pat-down of Skinner did not violate the Fourth Amendment.

**C. Probable Cause to Search Skinner's Vehicle**

Skinner argues that all evidence obtained as a result of the unlawful search of the Vehicle must be suppressed. (Motion at 7-8.)

A warrantless search of a car requires either probable cause or consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). While Officer Valdivia wrote in his Police Report that he interpreted Skinner's silence, or lack of objection, as content[1] to search his Vehicle (Police Report at 2), the Government instead argues that Valdivia had probable cause to search the Vehicle. (Opposition at 20-22.) Specifically, the Government argues that Valdivia's observations of the open wine jug in the back seat floorboard, the red solo cup with a dark purple liquid in the center console, and the smell of an alcoholic beverage coming from the Vehicle created probable cause to search the Vehicle for further evidence of open containers of alcohol. (Opposition at 21.) The Court is unconvinced that an officer's observation of open containers in an automobile creates a "fair probability" that more open containers will be found upon searching the automobile. See United States v. Davis, 530 F.3d 1069, 1084 (9th Cir. 2008) (defining probable cause). Based on the open containers that Valdivia had observed in plain view, Valdivia could have issued Skinner a citation for possessing open alcoholic containers while driving, Cal. Veh. Code § 23222, but Valdivia did not do so.

The Government relies on Kendrick v. Nelson, 448 F.2d 25, 27 (9th Cir. 1971) for the proposition that an officer who observes an open alcoholic beverage container has probable cause to search for further evidence of open containers. (Opposition at 21.) However, Kendrick is inapposite—the case involved not only an officer's observation of an open container of beer, but also the officer's observation that the vehicle's registration card was not properly posted as legally required at the time, the officer's knowledge that several thefts of motor vehicles had occurred in the area, and the driver's statements that the registration was inside the vehicle. Kendrick v. Nelson, 448 F.2d 25, 26 (9th Cir. 1971) ("Appellant's insistence that the certificate was in the automobile no doubt prompted the opening of the glove compartment when the

[1] "Consent can be inferred from non-verbal actions, but it must be unequivocal and specific and freely and intelligently given." United States v. Basher, 629 F.3d 1161, 1167 (9th Cir.2011) (quotation omitted). The Court finds that Skinner's lack of response and request to sit down is not unequivocal consent to the search of his Vehicle. Because the Government does not advance this argument in its Opposition, the Court deems it conceded.

certificate was not found in the usual and customary places."). Here, further evidence that Skinner had failed to stop behind the limit line could not have been found in the Vehicle. Nor was a search of the Vehicle required to issue Skinner a citation for the open containers in plain view. The Government fails to articulate why a reasonable officer would believe that more open containers would be found in the Vehicle, other than those in plain view and easily accessible by Defendant. Accordingly, the Court finds that Valdivia lacked probable cause to search Skinner's Vehicle.

**1. Reasonable Suspicion to Conduct Protective Search of Vehicle**

The Government alternatively argues that Valdivia had reasonable suspicion to conduct a protective search of defendant's car under Michigan v. Long, 463 U.S. 1032 (1983). Long held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049 (quoting Terry, 392 U.S. 21). Before Long's automobile was searched, Long was swerving and driving at an excessive speed, drove his car into a ditch, was unresponsive to the deputies' questions, appeared to be intoxicated, and the deputies observed a large knife on the floorboard of the driver's side of the car in plain view. Id. at 1050. The Supreme Court ruled that the "circumstances of this case clearly justified" the deputies "in their reasonable belief that Long posed a danger if he were permitted to reenter his vehicle." Id.

The Court is unconvinced by the Government's contention that Valdivia had reasonable suspicion that Skinner was dangerous. Unlike the defendant in Long, Skinner was compliant and cooperative during the stop. Skinner was forthcoming with information, including that he believed he had a blade in his pocket. He made no furtive or sudden movements indicating that he would reach for such a blade. He kept his hands on his head while exiting the Vehicle and during the pat down, as ordered by Valdivia. The lawful frisk of Skinner revealed that he did not have a blade or any other weapons on his person. Unlike in Long, Valdivia did not observe any weapons within the Vehicle while he questioned Skinner in the driver's seat or when he shined his flashlight in the rear seats. As such, there were no specific and articulable facts or inferences warranting the belief that Skinner was dangerous.

As such, the Court finds that the warrantless search of Skinner's Vehicle violated the Fourth Amendment.

**D. Exclusionary Rule**

The Government argues, finally, that even if the Vehicle search was unlawful, Valdivia's conduct was not sufficiently deliberate to trigger the exclusionary rule. (Opposition at 22-23.) But "[i]t is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures." United States v. Crawford, 372 F.3d 1048, 1054 (9th Cir. 2004). The exclusionary rule also requires a "causal

connection between the illegal conduct and evidence sought to be suppressed." Id. That connection exists here: the handgun would not have been found but for the unlawful search of the Vehicle. While the Government cites to Herring to limit the exclusionary rule's application, that case dealt with "isolated negligence attenuated from the arrest." Herring v. United States, 555 U.S. 135, 137 (2009). Here, the unconstitutional search led directly to the finding of the firearm. Therefore, the attenuation doctrine does not apply.

The Government also cites Davis v. United States, 564 U.S. 229, 238 (2011) for the proposition that "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale [of the exclusionary rule] loses much of its force, and exclusion cannot pay its way." Id. (citation modified). "The test for good faith is an objective one: 'whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances.' " United States v. Camou, 773 F.3d 932, 944 (9th Cir. 2014) (quoting Herring, 555 U.S. at 145). In applying the good faith exception, the Supreme Court has never "excuse[d] an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights." Id. at 945. In Herring the Court applied the good faith exception to an officer who relied on a county warrant clerk's assertion that the defendant had an outstanding warrant, which was in turn based on another clerk's negligence. 555 U.S. at 137-38. Similarly, in Davis, the Court found that the good faith exception applied to a police search that was "in compliance with binding precedent that [was] later overruled." 564 U.S. at 232.

Valdivia's conduct "directly led to the violation of [Skinner's] constitutional rights." Camou, 773 F.3d at 945. He searched Skinner's Vehicle without probable cause, and in making that improper calculus, did not rely on a subsequently invalidated statute or a third-party's mistaken assertion. Searching a vehicle without probable cause is conduct that a "reasonably well trained officer would have known was . . . illegal in light of all the circumstances." Id. at 944. As such, exclusion of the evidence obtained from the unconstitutional search is an appropriate remedy.

## V. CONCLUSION

For the above reasons, the Court finds that the search of Skinner's Vehicle was unlawful. Defendant's Motion to suppress all evidence derived from the January 25, 2025 traffic stop, frisk, and search of Defendant's Vehicle is **GRANTED-IN-PART**. All evidence recovered as a result of the Government's warrantless search of Defendant's Vehicle is **EXCLUDED**.

**IT IS SO ORDERED.**