UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION-RIVERSIDE

- - -

HONORABLE JESUS G. BERNAL, DISTRICT JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) No. EDCR 25-44-JGB
)
TEVIN DARNELL SKINNER, )
)
Defendant. )
____________________________________)

REPORTER'S TRANSCRIPT OF MOTION PROCEEDINGS

Riverside, California

Monday, July 14, 2025

3:20 p.m.

PHYLLIS A. PRESTON, CSR, FCRR
Federal Official Court Reporter
United States District Court
3470 Twelfth Street
Riverside, California 92501
stenojag@aol.com

APPEARANCES:

For the Plaintiff:

OFFICE OF THE UNITED STATES ATTORNEY
BY: **MILES ROBINSON**
Assistant United States Attorney
3403 Tenth Street, Suite 200
Riverside, California 92501

For the Defendant:

OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: **LUISA TAMEZ**
Deputy Federal Public Defender
3801 University Avenue, Suite 150
Riverside, California 92501

MONDAY, JULY 14, 2025; RIVERSIDE, CALIFORNIA

-o0o-

THE CLERK: We're on the record here calling Case No. EDCR 20 -- I'm sorry, EDCR 25-44-JGB, United States of America v. Tevin Darnell Skinner. 03:20

Counsel, please make your appearances.

MR. ROBINSON: Good afternoon, Your Honor. Miles Robinson for the United States.

THE COURT: Good afternoon.

MS. TAMEZ: Good afternoon, Your Honor. Luisa Tamez 03:20 on behalf of Mr. Tevin Darnell Skinner who is present in court.

THE COURT: Good afternoon. The matter is on calendar on a motion to suppress filed by the defendant.

So did you anticipate or do you anticipate requiring any testimony by the arresting officer, Ms. Tamez? 03:20

MS. TAMEZ: No, Your Honor. I think the record is clear from the body cam footage and also from his statement in his police report that this was a prolonged stop.

THE COURT: So if you want to argue, go ahead and argue. 03:21

MS. TAMEZ: Yes, Your Honor. Your Honor, as I mentioned, the body-worn camera in this case makes clear that this was a prolonged stop and a fishing expedition into Mr. Skinner which violated the Fourth Amendment.

Here, Officer Valdivia followed Mr. Skinner's car for 03:21

blocks, eventually pulling him over for allegedly failing to stop behind the white line, a white limit line. And, Your Honor, our first argument is that that in itself was not sufficient reason to stop Mr. Skinner. The body cam footage shows that that line was mostly faded. And California law requires that when a limit line is not clearly delineated, all that an individual must do is stop at the intersection, which in the video, Mr. Skinner clearly does. 03:21

However, even if Officer Valdivia had reason to pull Mr. Skinner over, he unlawfully prolonged the stop. The first thing he asks Mr. Skinner when he pulls him over is whether he was still on probation. So he clearly already knew who he was and followed him pretextually. He doesn't at that point give him a ticket for failing to stop behind the limit line. Rather, he commences irrelevant questioning: What's going on with your probation; why are you out here; where are you going; why are you doing this? 03:22 03:22

And again, Your Honor, Ninth Circuit case law makes clear that authority for a seizure during a traffic stop ends when the tasks related to the traffic infraction are or reasonably should be completed. Even if Mr. Skinner had failed to stop, it's pretty clear-cut: You didn't stop behind the line; here is your ticket; you may go on your way. So the moment that he did not -- that Officer Valdivia did not just do that already prolonged the stop in violation of the Fourth 03:22 03:22

Amendment.

THE COURT: Is it your position that even if he learned that Mr. Skinner was on probation, then the time limit was the time to issue the citation from going over the line and that's it? 03:23

MS. TAMEZ: Yes, Your Honor. And in this case, Mr. Skinner was previously before Your Honor. His probation does not have search conditions, so whether or not he was on probation in this case is irrelevant. The officer here, I believe, was just aware of the fact that he is on federal 03:23 probation and, again, was fishing into Mr. Skinner. There is no cause just based on his probation for him to have searched him. So -- and there was nothing other -- from the stop at that point which would give him reason to search Mr. Skinner either. 03:23

THE COURT: So what was the articulable reason for the search, as opposed to the stop; that he was on probation?

MS. TAMEZ: Your Honor, in this case, the officer states that he asked him to step out of the car because of baggy clothing, alleged gang ties, and the area that he was in. 03:23 And as we address in the motion, that none of that is reasonable suspicion for a stop and for a search of an individual. So at that point, also, there's insufficient reasonable suspicion to search Mr. Skinner or, as we present in the motion, insufficient probable cause to arrest him because 03:24

he was out of the car. He had no reason to believe that he
would be free to go at that point.

The Government contends that Officer Valdivia feared
for his safety but, again, that's not what Officer Valdivia
says was the reason in his police report. In his police 03:24
report, he just says it was because he was wearing baggy
clothing and nebulous gang ties.

There is no allegation nor is it shown on the video
that Mr. Skinner made any furtive movements. Rather, on the
video, Mr. Skinner makes statements like "May I please reach 03:24
for my jacket? My wallet is in my jacket. Can I grab it?"

Officer Valdivia also admits in his report that
Mr. Skinner wasn't intoxicated. There was no smell of alcohol
on his person. And, again, there is no specific articulable
reason for searching him. And all he states and admits in his 03:25
report is the baggy clothing and supposed gang ties. So at
that point, also, Your Honor, once Mr. Skinner is ordered out
of the car, the stop is prolonged unlawfully.

THE COURT: So there's an allegation that the officer
perceived an open container of alcohol in the vehicle and that 03:25
precipitated sort of the arrest, if you want to call it that,
and the search incident to that arrest. What is your response?

MS. TAMEZ: Your Honor, first, that under California
law, an open container is not an arrestable offense. It's also
just a citation. And Officer Valdivia, again, doesn't say "I 03:25

see an open container; here is your ticket." And in his report, he doesn't say that's why he searched him. He cites only to the baggy clothing, supposed gang ties. And then he proceeds to include in his report, he didn't smell alcohol on his person. 03:26

So to the extent that the Government would present that as a reason, that's not what Officer Valdivia said in his report nor was it any cause of concern for safety, because he admits Mr. Skinner himself didn't smell like he had consumed alcohol. And if he had wanted to, again, he could have given 03:26 him a ticket for it; let the task related to the traffic stop be complete and allow him to go on his way.

THE COURT: Very well. So what is the Government's response into this? The defense raises several issues, including the initial reason for the stop, and certainly the 03:26 reason to search the vehicle where the contraband was found. What is your response?

MR. ROBINSON: Yes, Your Honor. The Government submits that on the ICC video, that's attached as an exhibit, you can see the defendant clearly not stop behind the white 03:26 limit line. Also, if you watch the video, the defendant doesn't even stop behind the big red stop sign. So not only does he not stop behind the limit line, he doesn't even stop behind the big red stop sign, based on my view of the video.

Also, right in front of the limit line are big white 03:27

letters that say "stop." So even if the limit line was slightly faded or had been faded, and it was a little bit faded, I don't disagree with that, but the defendant -- the officer was justified in stopping him for failing to stop behind the limit line. And the officer also says he stopped him for failing to stop behind the limit line. So the officer saw the limit line. And a court should give, under *Cortez*, considerable deference to observations made by officers out in the field. 03:27

The second point I'd like to touch -- the defendant brought up was he only searched -- he did -- he only -- he didn't have a reason to search his car. The officer says at Exhibit 3 or at the -- my apologies. I had it written down. It's Exhibit 1, page 3, last paragraph, he says he searched the car, additionally, because of the additional alcohol container or -- excuse me. "Skinner made no objection to me searching his vehicle, which I interpreted as giving consent. Additionally, because of the alcohol container in the vehicle, which is a violation of Section 23222, subdivision (a), of the California Vehicle Code, I believed there could be additional containers of alcohol in the vehicle." 03:27 03:28 03:28

So the officer does say that he searched the vehicle to search for additional alcohol containers.

THE COURT: So is it your understanding that under the Fourth Amendment there has to be an affirmative signal of 03:28

consent and silence then does not mean consent to search?

MR. ROBINSON: The Government -- the United States is not arguing that the defendant gave consent to search.

THE COURT: So then -- so you're not arguing that Mr. Skinner gave consent to search the car? 03:28

MR. ROBINSON: Yes.

THE COURT: So the only justification under the officer's rationale for searching the car is to search for possible other open containers?

MR. ROBINSON: That is the -- that is the basis 03:29 articulated by Officer Valdivia. However, the test on probable cause to search or reasonable suspicion to search as a protective sweep, under *Michigan v. Long*, is an objective test. So his subjective motivations are not relevant. It's whether a reasonable police officer would have believed, for example, the 03:29 defendant was armed and dangerous or had a weapon possibly in his vehicle which would --

THE COURT: What reason would there be for any objective person to believe that Mr. Skinner had a weapon in the car? 03:29

MR. ROBINSON: Officer Valdivia's knowledge that defendant was a part of the Gateway Posse Crips. His knowledge that that gang is currently in a turf war and they often carry weapons within -- within this part of town. His -- defendant's admission -- by the way, and I'd like to highlight this, and 03:29

I'll go off on a little bit of a tangent. The officer asked the defendant if he has anything illegal in his car. The defendant responds "I have a blade in my pocket." In California, it's illegal to carry. The defendant -- by that, the officer had a reasonable belief officer -- or Officer Valdivia had a reasonable belief the defendant had an illegal knife in his pocket. In California, it's an illegal -- it's illegal to carry a concealed knife in your -- in your pocket under California Penal Code -- 03:30

THE COURT: But he was searched and there was no blade found, correct? 03:30

MR. ROBINSON: Correct, there was no blade found. But that -- when he made that admission -- it's illegal to carry certain types of knives in your pocket concealed. But when he made that admission, the officer, under that code section as well, as well as the armed and dangerous analysis, was permitted to take him out of the car and search him for that knife. 03:30

THE COURT: Right. And once he didn't find a knife, there was no probable cause to arrest. 03:30

MR. ROBINSON: For arrest, yes. But I submit there was probable cause to search the vehicle for additional open containers as well as a protective sweep.

THE COURT: No, you can't -- you can only justify the search of a car incident to arrest if you find that the -- that 03:31

the defendant has committed a crime and that there might be other evidence of that crime within the car. Otherwise, you just can't go in the car just because he believed there's reasonable suspicion.

MR. ROBINSON: To be clear, my argument isn't the search was -- to be clear, my number one reason -- or my reasons the officer could search the car was he was justified under *Kendrick v. Nelson* to search the car for additional open containers. That's a cri -- that's an infraction in California, and he was justified in searching it for that basis alone.

My second basis, under *Michigan v. Long,* was he could search the car as a protective sweep, not incident to arrest, but as a protective sweep under *Michigan v. Long.*

There is also a Ninth Circuit case that permits this type of -- or there is a Ninth Circuit case that permits this type of protective sweep that's cited in the Government's motion, *United States v. Vandergroen.* But if an officer has a reasonable belief a defendant is armed and dangerous and they are going to allow a defendant to return to that car, they're allowed to check if there's weapons so they're not a sitting duck or attacked by a weapon.

THE COURT: I understand that. But here there is no basis to believe that he had any weapons on him. Even the weapon he thought he had, he didn't have. And in that case --

I'm not familiar with the facts of the case, but it probably happened that there was a weapon found on him and then there was a justification to further search the car for other weapons.

MR. ROBINSON: No, Your Honor. In that case, the officer saw a blade in the car -- 03:32

THE COURT: Right.

MR. ROBINSON: -- so he searched. But here the defendant admits to having an illegal knife. A reasonable --

THE COURT: Which he doesn't have, right? So probable cause is an objective belief that there's probable cause to believe that he has committed a crime. He says, "I have a blade in my jacket." The officer takes him out, he searches him, there is no blade in the jacket, there is no probable cause. 03:32 03:33

MR. ROBINSON: Your Honor, I think we're conflating issues. Under *Michigan v. Long*, the search of a protective sweep, an officer can search if there's reasonable suspicion that a suspect is armed and dangerous. Here the defendant admits to having an illegal knife on his person. They don't -- 03:33

THE COURT: So the officer takes him out, searches the person before he searches the car, correct?

MR. ROBINSON: Yes.

THE COURT: He searches the person; there is no blade. 03:33

MR. ROBINSON: On his person.

THE COURT: Right. That's where he said it was.

MR. ROBINSON: There could have still been a blade in his car. He could have been mistaken that the knife was in his car. It's objectively reasonable if someone tells you that they have a blade in their pocket, that if it's not in their pocket, it's within their grab area within the car. 03:33

THE COURT: I don't buy that. Yeah, I just think even if you accept the stop as being legitimate in the first place, there's certainly no justification to search the car since having an open container is just an infraction. Just given the infraction, what does it matter whether there's one open container or two or three? There's an open container in the car, give him a ticket and let him go. 03:33

MR. ROBINSON: Well, if he has three open containers, it's a different citation. It's having three open containers versus having two open containers. It's California -- the State of California has an interest in not allowing people to drive around with several open containers. 03:34

Also, the Ninth Circuit has permitted searches of vehicles for infractions in *Kendrick v. Nelson,* which the Government cited. In that case, an officer saw an open can of beer, and the Ninth Circuit in that case went so far as to say he was permitted to search the vehicle for additional containers of liquor, but they also say -- even a magistrate 03:34 03:34

would have been -- recognizing the auto exception but just kind of discussing it, a magistrate would have been authorized in issuing a search warrant for the vehicle based on the observation of the open alcohol container under that same infraction that the defense says didn't give him a basis to search in this case. 03:34

THE COURT: I do not agree that having an open container in a vehicle gives you probable cause to search the car. I think that the fact that this officer says, well, it was this or this or this and this, protective sweep versus open container, blade versus alcohol, I think that goes to the point of how this is just kind of pretextual. He just wants to get in the car. So that's my determination. 03:35

I think -- I'll read through it once again, but my inclination is to grant the motion based on the lack of justification for searching the car after there was a search of the person. There was no contraband found on the person, no dangerous weapon found, and the fact that there's an open container in the car does not give sufficient reason to search the car. So, again, I'll read it over again, but that's my intended ruling. You'll get a written order to that effect. Thank you. 03:35 03:35

MS. TAMEZ: Thank you, Your Honor.

MR. ROBINSON: Thank you, Your Honor.

(Proceedings concluded.) 03:36

CERTIFICATE OF OFFICIAL REPORTER

I, PHYLLIS A. PRESTON, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 9TH DAY OF SEPTEMBER, 2025

/s/ PHYLLIS A. PRESTON

_____________________________________

PHYLLIS A. PRESTON, CSR No. 8701, FCRR

FEDERAL OFFICIAL COURT REPORTER